## STATE *v.* MURPHY.

[86 South. 868, No. 21426.]

1. EMBEZZLEMENT. *Indictment for embezzlement by chancery clerk held not subject to demurrer.*

An indictment for embezzlement under section 1141, Code 1906 (Hemingway's Code, section 869), which charges that the defendant was a duly and legally elected and qualified chancery clerk, and that by virtue of his office, while acting in his official capacity, certain funds came into his possession which belonged to the unknown heirs of named persons, and that the defendant, intending and designing to cheat and defraud said unknown heirs, feloniously converted to his own use and embezzled said funds with the felonious intent to deprive them of their money, is a good indictment, even though it needlessly sets out the giving of a note for said funds payable to said officer, his successor or bearer, and that said note, was sold or transferred to a named bank, and the funds so obtained for said note were embezzled, etc.

2. INDICTMENT AND INFORMATION. *Failure of indictment for embezzlement to aver that "unknown heirs" were living persons unknown to grand jury not fatal.*

The words "unknown heirs" of named persons means the living heirs of such persons whose names are to the grand jurors unknown, and an indictment is not demurrable for failure to to specifically set forth that such heirs were living, and that their names were unknown to the grand jury.

APPEAL from circuit court of Harrison county.
HON. D. GRAHAM, Judge.

John J. Murphy was indicted for embezzlement. A demurrer to the indictment was sustained, and the state appeals. Reversed and remanded.

*H. C. Holden,* assistant attorney-general, for the state.

Right of The State to Appeal. There can be no question of the right of the state to appeal from the judgment sustaining the demurrer to the indictment. Such appeals are authorized by paragraph 1, section 16, Hemingway's Code (section 40, of the Code of 1906).

The Demurrer Should Have Been Overruled. The defendant demurred and assigned sixteen grounds for demurrer. There is no indication from the judgment of the court below of the reason or reasons for sustaining the demurrer; the court in its judgment, does not state upon what ground or grounds of the demurrer the same was sustained. It will therefore be necessary to take up categorically each separate ground for demurrer assigned by the defendant in the court below.

It is here urged against the indictment that although it charges the defendant with the embezzlement of nine hundred ninety-seven dollars and thirty-five cents with interest, it does not state any facts showing that said money came into his hands by virtue of his office or that he held the same in trust for any other person.

By reference to the indictment at page two and page three of the record, it will be seen that this ground of the demurrer is untenable. The indictment does charge that this money came into his hands by virtue of his office, and

that he held same for the unknown heirs of James Ramsay and John Parker, deceased.

Sixth Ground: It is here urged against the indictment that it does not charge that the defendant converted property or money belonging to any living person or corporation. The indictment charges that the money embezzled was the property of the unknown heirs of James Ramsay and John Parker, deceased. The heirs of James Ramsay and John Parker may or may not be living. But this is immaterial. Whether or not they are living is a fact yet to be ascertained. It is not essential that the indictment charge that the money embezzled belonged to a living person. It was only necessary to charge that the money did not belong to the chancery clerk, but that it belonged to certain persons for whom, by virtue of his office, he was acting in a fiduciary capacity and that while acting in such capacity as chancery clerk he converted the money to his own personal use.

Eighth Ground: It is here urged against the indictment that it did not show that the said note was a valuable thing or had any value whatever. The indictment charges that the amount of the note was nine hundred, ninety-seven dollars and thirty-five cents and that the defendant negotiated the note and obtained this amount, which shows that the note was a valuable thing, in the first place.

Ninth Ground: It is here urged against the indictment that it does not show how the alleged funds of the unknown heirs of James Ramsay and John Parker, deceased, came into the possession of the defendant, nor the purpose for which they were held by the defendant. It was not necessary to show the purpose for which these funds were held. It was only necessary to charge to whom they belonged and that they came into the possession of the defendant by virtue of his office. An indictment for embezzlement is not bad for failure to show from whom or how the money was received. *Richburger* v. *State,* 90 Miss. 906, 44 So. 772.

"In an indictment or information against a public officer or employee for embezzlement, it is sufficient to follow the statute and allege acts and facts therein declared to constitute a crime. The official character of the defendant should be set forth . . . in addition to the allegation as to defendant's official character, the indictment or information must aver that the money or other property embezzled was received or held by him by virtue of his office or employment; but it has been held that the purpose for which the money was entrusted to defendant need not be set out." 20 C. J. 476, paragraph 10; *Hemingway* v. *State,* 68 Miss. 371, 8 So. 317; *State* v. *Jones,* 102 Miss. 89, 58 So. 782; *People* v. *Cobler,* 108 Cal. 538, 41 Pac. 401; *State* v. *Eames,* 3 So. (La.) 93, Embezzlement is a statutory and not a common-law crime. *McInnis* v. *State,* 97 Miss. 280, 52 So. 634. In charging the crime, therefore, the indictment should follow the statute. The indictment in this case does follow the statute. See section 869, Hemingway's Code (section 1141, Code of 1906).

Eleventh Ground: It is here urged against the indictment that it does not charge embezzlement of the funds of the unknown heirs of James Ramsay and John Parker, deceased. This objection goes to the whole indictment. It is submitted that the indictment does charge embezzlement of said funds and it is sufficient for that purpose. The demurrer to the indictment should have been overruled by the court. 20 C. J. 463, citing cases and discussing the rule. In general, an indictment for embezzlement must show the ownership of the property alleged to have been embezzled with the same particularity as in an indictment for larceny. 20 C. J., paragraph 5.

What is the particularity necessary in an indictment for larceny in this state? The indictment must state the entire Christian name as well as the surname of the owner of the property. Whenever the name of the owner cannot be ascertained, the indictment shall aver the larceny of the property of some person to the jurors unknown, and

if the owner of the property should be discovered on the trial the accused will be acquitted. *Unger* v. *The State,* 42 Miss. 642.

In the case at bar the property embezzled is alleged to be the property of the unknown heirs of James Ramsay and John Parker, deceased. It is submitted that this averment of ownership is sufficient. Surely if to allege ownership as being in persons unknown is sufficient in an indictment for larceny, then to allege, in an indictment for embezzlement, ownership in the unknown heirs of a deceased person, is sufficient. Ownership in the indictment in the case at bar is alleged with the same, if not more particularity as is required in an indictment for larceny.

Thirteenth Ground: It is urged against the indictment that it does not show that James Ramsay and John Parker, deceased, left any heirs or that there are any heirs now living. It is not necessary for the indictment to show this. It is sufficient if the indictment charge that the funds belong to certain unknown persons and that these funds were converted by the defendant to his own personal use.

Fourteenth Ground: It is here urged against the indictment that it is vague, uncertain, indefinite and insufficient, and on the fifteenth ground that it charges no crime known to the law. The reading of the indictment will completely overturn this objection. It is neither vague, uncertain nor indefinite. It charges the crime of embezzlement under section 869, Hemingway's Code, and under section 872, Hemingway's Code.

Sixteenth Ground: It is here urged against the indictment that it is bad for duplicity in that it charges two felonies in one count. The indictment charges only one felony, namely embezzlement by a county officer by reason of the conversion to his own use of money which came into his hands and possession by virtue of his office.

The judgment of the lower court sustaining the demurrer should be reversed. If this be done, then under sec-

tion 16, Hemingway's Code, the defendant may be again indicted and tried for the same offense. Whatever may be the decision of this court, a written opinion would be of great assistance to the prosecuting officers of the state.

*White & Ford* and *Mize & Mize*, for appellee.

The demurrer was properly sustained. This is an indictment drawn under section 869 of Hemingway's Code, providing, among other things, that if any county officer shall unlawfully convert to his own use any money or other valuable thing which comes into his hands or possession by virtue of his office or employment, he is guilty of embezzlement. It is unnecessary to state in this brief the grounds, of the demurrer, as they are found at page 6 of the record, and every deficiency in the indictment is reached by one of the several grounds of demurrer.

The court will observe that the district attorney attempted to follow said section 869. The indictment begins by first charging that Murphy was the chancery clerk of Harrison county, Mississippi, and in his official capacity, had in his possession and custody, by virtue of his said office, a certain promissory note, in the words and figures as set out in the indictment, but winds up, not by charging him with the embezzlement of the promissory note aforesaid which came into his hands by virtue of his office, but charges him with the embezzlement of nine hundred ninety-seven dollars and thirty-five cents in money, without alleging that said money came into his hands or possession by virtue of his office of chancery clerk of said county.

The court will observe that the statute aforesaid uses the following words: "Shall unlawfully convert to his own use any money or other valuable thing which comes to his hands or possession by virtue of his office or employment." Now, the indictment only charges that said promissory note came into his hands or possesison by virtue of his office, and in order for this part of the indictment to be correct, and properly drawn, it would have to be charged not only this but that the note was a valu-

able thing, and should then have charged that Murphy embezzled the note. In other words, it is not permissible for the indictment to allege that a note came into the hands of the chancery clerk by virtue of his office, and then wind up by charging that he embezzled nine hundred ninety-seven dollars and thirty-five cents in money (the amount of the note) without having alleged that the nine hundred ninety-seven dollars and thirty-five cents in money came into his hands by virtue of his office.

We cannot, by reading the indictment, tell whether it is for the embezzlement of nine hundred ninety-seven dollars and thirty-five cents in money or for the embezzlement of the note in that amount. If it is for the embezzlement of the promissory note described in the indictment, then the indictment is not properly drawn, because it does not allege that the note embezzled is a valuable thing, which under the statute it must do if a note is the thing embezzled, and not actual money.

Further, the indictment does not allege that James Ramsay, deceased, nor John Parker, deceased, left any heirs, but just says that Murphy attempted to cheat and defraud the unknown heirs of James Ramsay, deceased, and John Parker, deceased. The indictment should have charged that James Ramsay, deceased, and John Parker, deceased, had heirs as an affirmative charge, and that their names were to the grand jury unknown. The indictment does not charge that Murphy embezzled the funds of any living person, body politic or corporation. It makes no attempt to say how much of the money belonged to any of the heirs of John Parker or how much belonged to any of the heirs of James Ramsay. The indictment should at least have said how much belonged to John Parker at his death, and then charged that each one left heirs, whose names were to the grand jury unknown.

The note, the court will observe, is payable either to Murphy, chancery clerk, or his successor in office, or to the bearer, and payable to the Bank of Commerce. It is a very strangely drawn note. Murphy had a perfect right

to transfer this note to the First National Bank of Gulf-port, as it would be bearer. The indictment does not charge that Murphy unlawfully transferred the note to the First National Bank of Gulfport, but, after charging that he transferred the note to said bank and received thereon the sum of nine hundred ninety-seven dollars, and thirty-five cents, it charges that he did then and there wilfully, unlawfully, fraudulently and feloniously embezzle said money, and unlawfully, wilfully, fraudulently and feloniously convert the same to his own use, then and there unlawfully, willfully, fraudulently and feloniously intending to embezzle and convert the same to his own use, said money being the property of the unknown heirs of James Ramsay, deceased, and the unknown heirs of John Parker, deceased.

In short, for this indictment to have been good, it would have to allege that John Murphy was chancery clerk of Harrison county, Mississippi, and, as such by virtue of his office, there came to his hands or possession a promissory note of nine hundred ninety-seven dollars and thirty-five cents, which he embezzled, and setting out the other essential ingredients, among them, that said note was a valuable thing, but the indictment simply charges that, by virtue of this office as chancery clerk, a promissory note came into his hands or possession, and that he transferred said note to the First National Bank of Gulfport and received thereon the sum of nine hundred ninety-seven dollars and thirty-five cents and then charged that he embezzled said nine hundred, ninety-seven dollars and thirty-five cents in money, without charging that said money embezzled came into his hands by virtue of his office of chancery clerk, the very thing he is charged with embezzling, but the indictment failing to allege how, or that it came into his possession as an officer.

Further, if the indictment attempted, as it does, to indict Murphy for embezzlement, it must charge him with embezzling from some one, some body politic, person or corporation. There can be no embezzlement without em-

bezzling from some one of the aforesaid, and the indictment should have alleged that James Ramsay, deceased, and John Parker, deceased, left heirs, and that their names were to the grand jury unknown. James Ramsay and John Parker may not have left any heirs; the indictment does not charge that they left any.

ETHRIDGE, J., delivered the opinion of the court.

The appellee, John J. Murphy, was indicted for embezzlement and demurred to the indictment interposed and sustained by the court below, from which judgment the state prosecutes this appeal.

The indictment reads as follows:

"The grand jurors of the state of Mississippi . . . upon their oaths present that John J. Murphy, in the county aforesaid, on the 1st day of January, A. D. 1919, then and there being the regularly and legally elected, qualified, and acting chancery clerk of Harrison county, Miss., then and there acting in his official capacity as said chancery clerk aforesaid, and then and there by virtue of his said office as said chancery clerk having in his possession and in his custody a certain promissory note in words and figures and in effect as follows, to wit:

" '$997.35.           Gulfport, Miss., Feb. 8, 1915.

" 'One year after date I, we, or either of us promise to pay to John J. Murphy, chancery clerk, or his successor in office, or bearer, nine hundred ninety-seven and 35/100 ($997.35) dollars, payable to the Bank of Commerce, Gulfport, Mississippi, for value received, with interest from date at the rate of eight per cent. per annum until paid without defalcation or discount. The makers and indorsers of this note severally waive presentment for payment, notice of nonpayment, want of consideration, protest and consent that the time of payment may be extended without notice thereof. And in the event default is made in

the payment of this note at maturity and it is placed in the hands of an attorney for collection or suit is brought on the same, then an additional amount of fifteen per cent. on the principal and interest on this note shall be added to the same as collection fees.

"'[Signed]     B. P. HARRISON.
"'HUGH MCINNIS.
"'T. B. J. KELLIER.
"'C. L. WALLER.'

—which said promissory note came into his possession by virtue of the loan made to B. P. Harrison out of the funds in the hands of said John J. Murphy, chancery clerk as aforesaid, belonging to the unknown heirs of James Ramsay, deceased, and John Parker, deceased, which said loan was made to the said B. P. Harrison and said note taken by him, the said John J. Murphy, in his official capacity, then and there as said chancery clerk aforesaid, and said note being then and there unpaid, and the said John J. Murphy, as chancery clerk aforesaid, then and there having the same in his possession by virtue of his said office did then and there unlawfully, willfully, designedly, feloniously, and fraudulently intending and designing to cheat and defraud the said unknown heirs of James Ramsay, deceased, and the unknown heirs of John Parker, deceased, and to commit a fraud in office and embezzle the sum of nine hundred ninety-seven dollars and thirty-five cents, together with the interest thereon, the exact amount of which being to the grand jurors unknown, convert said note into cash at and through the First National Bank of Gulfport, a banking corporation domiciled at Gulfport, Harrison county, Miss., and received thereon from the said First National Bank the said sum of nine hundred ninety-seven dollars and thirty-five cents and interest on said note from date at the rate of eight per cent. per annum, the exact amount of which being to the grand jurors unknown, and did then and there willfully, unlawfully, fraudulently, and feloniously embezzle said money and unlawfully, willfully, fraudulently, and feloniously intending to embezzle

and convert the same to his own use, said money being the property of the unknown heirs of James Ramsay, deceased, and the unknown heirs of John Parker, deceased, and of the value of nine hundred ninety-seven dollars and thirty-five cents in lawful money of the United States of America, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Mississippi."

The demurrer contained sixteen grounds and read as follows:

"Now comes John J. Murphy, defendant, and demurs to the indictment against him in said cause, and for ground of demurrer says:

"(1)  The indictment charges that John J. Murphy, in his official capacity, received certain promissory note of date February 8, 1915, for nine hundred ninety-seven dollars and thirty-five cents, but does not charge him with the embezzlement of said note.

"(2)  Said indictment charges the defendant with the embezzlement of nine hundred ninety-seven dollars and thirty-five cents with interest, but does not state any facts showing that said money came into his hands under or by virtue of his office, or that he held the same in trust for any other person.

"(3)  Said indictment does charge defendant with embezzlement as chancery clerk of nine hundred ninety-seven dollars and thirty-five cents, with interest at eight per cent. from February 8, 1915, without alleging any facts showing that the said money came into his hands as chancery clerk, or by virtue of his office as such clerk.

"(4)  Said indictment does not set up any facts that show how said note came into his possession by virtue of his office as chancery clerk, or in the discharge of any official duty.

"(5)  Said indictment does not show that this defendant embezzled either property or money that came into his possession by virtue of his office as chancery clerk.

"(6)   That said indictment does not show that this defendant converted to his own use, feloniously or otherwise, any property or money belonging to any living person or any corporation.

"(7)   Said note set out in the indictment shows that it is payable to bearer, or to John J. Murphy, chancery clerk, or to the Bank'of Commerce, of Gulfport, Miss., and said indictment does not show that said John J. Murphy did not have authority to deliver the note or negotiate the note to the First National Bank of Gulfport, Miss. .

"(8)   Said indictment does not show that said note was a valuable thing, or had any value whatever.

"(9)   Said indictment does not show how the alleged funds of the unknown heirs of James Ramsay and John Parker came into the possession of the defendant, and does not show the purpose for which they were held by defendant.

"(10)   Said indictment does not show that the defendant ever loaned any of said funds to any person, or that he delivered any of said funds to any person, as a consideration of said note, or that he ever parted with any funds belonging to the heirs of James Ramsay and John Parker, or either of them.

"(11)   Said indictment does not charge that the defendant embezzled any of the said funds of the heirs of James Ramsay and John Parker alleged to have come into his possession.

"(12)   Said indictment does not show that said note was the property of the heirs of James Ramsay and John Parker, or that any funds belonging to the heirs of James Ramsay and John Parker constituted the considertation of said note, or that there was any consideration valuable in law for said note, or that said note was collectible by law.

"(13)   Said indictment does not show that James Ramsay and John Parker left any heirs or that there are any heirs of the said James Ramsay and John Parker now living.

"(14) Said indictment is vague, uncertain, indefinite, and insufficient in law.

"(15) Said indictment charges no crime known to the law.

"(16) Said indictment is bad for duplicity in this, that it charges two felonies in one count."

The indictment was founded upon section 1141, Code of 1906 (Hemingway's Code, section 869), which reads as follows:

"If any state officer or any county officer . . . . or an officer of any city, town, or village, or a notary public, or any other person holding any public office or employment, or any executor, administrator, or guardian, or any trustee of an express trust, any master or commissioner or receiver, or any attorney at law or solicitor, or any bank or collecting agent, or other person engaged in like public employment, or any other person undertaking to act for others and intrusted by them with business of any kind, or with money, shall unlawfully convert to his own use any money or other valuable thing which comes to his hands or possession by virtue of his office or employment, or shall not, when lawfully required to turn over such money or deliver such thing, immediately do so according to his legal obligation, he shall, on conviction, be imprisoned in the penitentiary not more than twenty years, or be fined not more than one thousand dollars, or imprisoned in the county jail not more than one year."

We think the indictment is a good one for embezzlement of money coming into the hands of appellee by virtue of his office and converted to his own use. The indictment sets out with needless prolixity the facts constituting the transaction, and, while it is said in the indictment that the note came into his possession as chancery clerk, and that he collected the amount of the note or disposed of the note to the First National Bank and received from the bank the money named in the indictment, it does not make the indictment charge the embezzlement of the note. The money for which the note was given constituted trust

funds belonging to the parties named as unknown heirs of James Ramsay, deceased, and John Parker, deceased, and that he took this note and collected money on it. This does not render the indictment bad for duplicity, for, when he obtained the money for the note which he probably had a right to do, the money so obtained did not become his personal money, but became money belonging to the persons being the heirs of said James Ramsay, deceased, and John Parker, deceased, and the indictment distinctly charges this fact and charges that after receiving the money for the note that Murphy then and there unlawfully, willfully, fraudulently, and feloniously intending to convert the same to his own use.

It is said that the indictment is insufficient because also it did not allege the ownership of the money in person or corporation, and that the indictment should have charged that the money embezzled belonged to persons to the grand jurors unknown.

In our opinion the designation of the owners as the unknown heirs of James Ramsay, deceased, and John Parker, deceased, sufficiently designate the owners of the money. It is equivalent to saying that the money belongs to the heirs of James Ramsay, deceased, and John Parker, deceased, whose names are to the grand jurors unknown. A great deal of technical refinement is used in drawing indictments of this kind, and in trying to keep within the technical rules the grand jury went needlessly into the history of the transaction. But, taking the sword of common sense and cutting the Gordian knot of technical refinement, we find that the indictment charges Murphy was chancery clerk, and that as such moneys came into his possession by virtue of his office, that said money belonged to the unknown heirs of the persons named, and that Murphy, intending and designing to cheat and defraud the said unknown heirs of their money, converted it to his own use with the felonious intent to deprive them of such money.

The heirs of a person necessarily mean those living persons who are entitled to the fund, and using the expression "unknown heirs" is equivalent to saying that the names of such heirs are to the grand jury unknown.

The judgment of the court sustaining the demurrer will be reversed, and the cause remanded for a trial upon the indictment.

*Reversed and remanded.*